## THE QUEEN OF THE EAST.*

*(Circuit Court, E. D. Louisiana. May 3, 1882.)*

1. ADMIRALTY—TOWAGE.

Payment for towage from and to sea, under a contract in which the time for payment for the same is not specified, is due in the port of New Orleans, under the custom thereof, prior to the ship's being towed back to sea.

2. SAME—USAGE AND CUSTOM.

It is well settled that, in all maritime contracts, usage or customs is always applicable and binding on the parties to explain doubtful and supplement incomplete agreements and stipulations.

3. SAME—LIEN FOR TOWAGE.

As there was performance of the contract for towage, the libellants had a lien upon the vessel for the full amount due them.

*The Prince Leopold,* 9 FED. REP. 333, distinguished.

*E. D. Craig,* for libellants.

*E. W. Huntington,* for defendants.

PARDEE, C. J. The facts of the case are:

That in December, 1880, off the mouth of the Mississippi, the master of the ship Queen of the East contracted with the master of the libellants' tow-boat Confidence to tow the said ship to the port of New Orleans and back to sea for 35 cents per ton. No specification was made as to when the towage was to be paid, nor as to the proportion to be paid for up towage as against down. The ship was accordingly towed by libellants' boat to the city, whereupon a bill was made out by libellants' agents for the full amount of the towage, which bill was presented to the master of the ship, was approved by him, and then presented to and left with the ship's consignees and agents for payment. The agents refused to pay the bill, whereupon a demand for payment was made on the master of the ship, who also refused to pay until the ship should be put to sea. In February following, the ship being ready to sail, notice being given to the tow-boat's agents, the libellants' tow-boat went along-side and tendered performance of the down towage, on condition that the bill should be settled before leaving port. Payment was refused by the master, who declared that he had the money and would pay when the ship was put to sea, and by the agents, who offered their written guaranty that they would pay when the ship was put to sea. Thereupon the tow-boat left, and libellants instituted proceedings to libel the ship for the full amount of towage and one day's demurrage. The ship gave bond, and procuring another tow-boat, at a cost of $250, about double the ordinary towage, went on her voyage. Her claimants file a cross-libel, claiming from the tow-boat the amount paid for down towage, and for three days' demurrage on account of delays caused by the alleged failure of the libellants to perform their contract. The evidence further shows that the tonnage of the Queen of the East was about 1,227 tons; that the proportion of up towage to down towage is about two to one; and that when

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

the towage from sea to sea is fixed at 35 cents, 25 cents is the proper proportion for the up towage, and 10 cents for the down towage. The evidence of tow-boat men, ship-agents, and ship-brokers establishes that when contracts are made for the round towage, and no stipulation made for time of payment, the generally-followed rules and usages are that the proportion for up towage is payable within a few days after the ship arrives in port, and the balance for down towage before the ship is towed from port.

From this statement of facts it seems clear that the rights of the parties in this case are determined when, it is determined as to the time the towage contracted between them was payable. They could have made any stipulation as to time and mode of payment they had seen fit. Not having stipulated in that regard, the ordinary rule that payment for services is not exigible until after the services are rendered will prevail, unless—*First*, there is a custom of the port fixing the time of payment in regard to contracts for round towage; and, *second*, such custom is binding on the parties.

I have found from the evidence that there was a well-defined rule or usage that in such contracts the whole towage was payable before the ship left port, and I am satisfied that that rule or usage was known, certain, and reasonable. It was certainly a reasonable usage, for the tow-boat, being always within the jurisdiction of the court, any fault or neglect on her part could always be prosecuted; while a default on the ship's part could only be remedied by pursuing her to foreign ports, or trusting to her some time returning. And then the high seas, perhaps in storm and heavy seas, is not the most convenient place for the adjustment of financial accounts and differences, particularly where, in cases like this under consideration, each party (as the evidence shows) suspected trickery on the other side, and determined that he would be safe, whoever else was left in the lurch. In short, a settlement in port protects both sides, while a settlement at sea would leave the ship mistress of the situation.

That this rule was known to the master of the ship there can be no doubt, since he had previously twice visited the port, and he followed the rule and approved the tow-boat's bill for the full amount, which is utterly irreconcilable with any idea in his mind that the towage was not to be paid except by himself after his ship had been put to sea. And it seems clear that the agents and consignees of the ship were also aware of the rule, else why did they entertain the bill, and why was it that, as the evidence shows, they only provided the master with greenbacks to pay after the issue had been fully made between the master of the ship and the master of the tow-boat?

There is no suggestion of illegality in regard to any such usage. I understand it to be well settled that in all maritime contracts usage or customs are always applicable and binding on the parties to explain doubtful and supplement incomplete agreements and stipulations.

"The principle on which evidence of usage is admissible for such a purpose is that the parties have not set down the whole of their contracts in all its terms, but those only which were necessary to be determined in the particular case by specific agreement, and which, of course, might vary infinitely, leaving to implication and tacit understanding all those general and unvarying incidents which a uniform usage would annex, and according to which in reason they must be understood to contract, unless they expressly exclude them." See Maclachlan, 384.

"And custom or usage may be proved, not only to explain the meaning of terms to which a peculiar and technical meaning is thus affixed, but also to supply evidence of the intentions of the parties in respect to matters with regard to which the contract itself affords a doubtful indication, or *perhaps* no indication whatever. And therefore an established and well-known custom may add to a contract terms or stipulations not contained in it." See 1 Wait, Ac. & Def., 128 *et seq.*

From all of which it seems that as the parties in the contract of towage were silent as to the time the towage was payable, they are presumed to have contracted according to the usages of the port with reference thereto, in which case the ship and her agents were in default in not paying before the ship left port. The libellants performed the larger part of their contract, and made due and sufficient tender of the remainder, and were only hindered from full performance by the default of the ship. The libellants are entitled to pay as if they had fully performed. They are not entitled to demurrage for being compelled to go down the river light, as they recover the same amount as if they had towed down the Queen of the East. The respondents, being in fault, are not entitled to recover anything for the ship's increased expenses, such expenses being clearly the fault and laches of the ship's agents and master.

Some arguments were made at the hearing that the libellants were not entitled to judgment *in rem*, as they had no lien particularly for any amount the ship might owe for down towage, as that towage was not performed. This court has held that an unexecuted contract for towage made by the ship's agent in port gave no lien. See case of *The Prince Leopold*, 9 FED. REP. 333. In that case there was no performance nor even tender of performance. In the case now under consideration there was part performance, and, as is shown

by the evidence, the towage contract was one towage from sea to sea. The contract must be treated as a whole, and as there was performance the contract for towage cannot be said to be unexecuted. The libellants have a lien for the full amount due them.

Let a decree be entered in favor of libellants for the sum of $429.45, with legal interest, 5 per cent., thereon from February 19, 1881, with costs in both courts.